**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| PLANET SUB HOLDINGS, INC., PLANET SUB ENTERPRISES, INC., 1 THIRTY-NINE, INC., and 2 THIRTY-NINE, INC., Individually and on behalf of all others similarly situated | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:20-cv-00577 |
| | ) | **JURY TRIAL DEMANDED** |
| vs. | ) ) | |
| STATE AUTO PROPERTY & CASUALTY COMPANY, INC., | ) ) | |
| Defendant. | | |

## CLASS ACTION COMPLAINT

Plaintiffs Planet Sub Holdings, Inc., Planet Sub Enterprises, Inc., 1 Thirty-Nine, Inc., and 2 Thirty-Nine, Inc. ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant State Auto Property & Casualty ("Defendant" or "State Auto"), and in support thereof state and allege the following:

## I.    NATURE OF THE ACTION

1.    This action arises out of Defendant's failure to provide insurance coverage for the losses sustained and expenses incurred by Plaintiffs because of the ongoing Coronavirus (COVID-19) pandemic.

2.    For many years, Plaintiffs have operated Planet Sub restaurants in the states of Missouri, Oklahoma, and Kansas.

3.    Plaintiffs have been prevented from operating their dining rooms and were restricted to carry out or delivery services due to the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19 ("COVID-19").

4. To protect their business in the event that they suddenly had to suspend operations for reasons outside of their control, or in order to prevent further property damage, Plaintiffs purchased insurance coverage from Defendant, including property coverage, as set forth in State Auto's Businessowners Special Property Coverage Form BP002 (12/99).

5. Defendant's coverage forms provide "Business Income" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by, among other things, direct physical loss or physical damage to the covered property, including payroll expenses.

6. Defendant's coverage forms also provide "Extra Expense" coverage, which promises to pay expenses incurred to avoid or minimize the suspension of business and to continue operations.

7. Defendant's coverage forms also provide "Civil Authority" coverage, which promises to pay for loss caused by action of civil authority that prohibits, among other things, access to the premises.

8. Defendant's coverage forms, under sections titled "Duties in the Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

9. Unlike some policies that provide Business Income (also referred to as "business interruption") coverage, Defendant's coverage forms do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

10. Plaintiffs were forced to suspend dining room operations at their restaurants due to COVID-19 and the ensuing orders issued by civil authorities in the States of Missouri, Kansas, and Oklahoma, and by the city of Kansas City, Missouri and the county of Jackson County,

2

Missouri, mandating the suspension of business for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

11.     Upon information and belief, Defendant has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Extra Expense, Civil Authority, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the limitation of normal business operations, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. In particular, Defendant has denied claims submitted by Plaintiffs under their policies.

## II.     THE PARTIES

11.     Planet Sub Holdings, Inc. is a Kansas corporation, with its principal place of business in Lenexa, Kansas. Planet Sub Holdings, Inc. is the parent company of Plaintiffs 1 Thirty-Nine, Inc. and 2 Thirty-Nine, Inc.

12.     Planet Sub Enterprises, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri.  It owns and operates two restaurant locations in Missouri, including 4928 Main Street, Kansas City, Jackson County, Missouri and one in Kansas.

13.     1 Thirty-Nine, Inc. is a Kansas corporation with its principal place of business in Lenexa, Kansas.  It owns and operates five restaurant locations in Kansas.

14.     2 Thirty-Nine, Inc. is a Missouri corporation with its principal place of business in Lenexa, Kansas.  It owns and operates three restaurant locations in Missouri.

15.     Defendant is, and at all times relevant hereto has been, an insurance company writing insurance policies and doing business in the State of Missouri, capable of suing and being sued in the courts of this State, and is registered to do business in the State of Missouri. Defendant

is a foreign corporation organized, incorporated and existing under the laws of the State of Iowa, with its principal place of business at 1300 Woodland Avenue, West Des Moines, Iowa 50265.

## III.    JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiffs and Defendant are citizens of different states, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

17.    Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated in this judicial district.  The policy at issue cover Plaintiffs' facilities located in the State of Missouri and Plaintiffs purchased the policy at issue for their facilities, including those located in the State of Missouri.

## IV.    FACTUAL BACKGROUND

### The Insurance Policies

18.    In return for the payment of a premium, State Auto issued Policy No. BOP2940889 to Plaintiffs, for a policy period of November 1, 2019 to November 1, 2020, including a Businessowners Special Property Coverage Form. Policy No. BOP2940889 is attached hereto and incorporated by reference as Exhibit 1.  Upon information and belief, the forms and endorsements to Exhibit 1 are materially the same as those policies held by the members of the proposed class.

19.    Plaintiffs are the Named Insureds under the policy, which remains in force.

20.    Defendant is the effective and liable insurer of the policy and policies meeting the class definition.

4

21.     Plaintiffs have performed all of their obligations under Policy No. BOP2940889, including the payment of premiums. The covered properties, with respect to the Businessowner Special Property Coverage Form, are restaurants located at, among other locations, 115 W. 7th Street and 4928 Main Street, Kansas City, Jackson County, Missouri.

22.     Sometimes property insurance is sold on a specific peril basis, where coverage is limited to risks of loss that are specifically listed (e.g., hurricane, earthquake, etc.). Many property policies sold in the United States, however, including those sold by State Auto, are "all-risk" property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

23.     Under the heading "Covered Causes of Loss," Defendant agreed to pay for "Direct Physical Loss unless that loss is excluded in Section B., Exclusions; or Limited in Paragraph A.4., Limitations."

24.     Defendant did not exclude or limit coverage for losses from viruses in Plaintiffs' policies or those of the other class members.  The policy did not exclude pandemic coverage, communicable disease coverage or anything similar.

25.     Losses due to COVID-19 are a Covered Cause of Loss under Defendant's policies with the Businessowners Special Property Coverage Form.

26.     In Businessowners Special Property Coverage Form, State Auto agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of their operations during the "period of restoration" caused by direct physical loss to property at the covered premises.

27.     "Period of restoration" is defined to mean the period of time that begins 72 hours after the time of loss for Business Income Coverage or immediately after the time of direct loss

5

for Extra Expense Coverage.

28.     "Business Income" is defined to mean net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

29.     The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm—Insurance Services Office, Inc. or "ISO"—circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would has a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

30.     The ISO also created a new "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by certain insurance policies. The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

31.     Some insurers added the Virus Exclusion to their policies that provide Business Income (also referred to as "business interruption") coverage. State Auto's Businessowners Special Property Coverage Form, however, does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

32.     In the Businessowners Special Property Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds sustain during the "period of restoration" that the insureds would not has sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

33.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

34.     Defendant also agreed to "pay for the actual loss of 'Business Income'" sustained "and necessary Extra Expense" "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

35.     Defendant's coverage forms, under sections titled "Duties in the Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This is commonly referred to as "Sue and Labor" coverage.  In this instance, Plaintiffs was required to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiffs' premises.

36.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of Defendant's policies.

**COVID-19 and the Covered Cause of Loss**

37.     Coronavirus (COVID-19) is a highly contagious virus that has rapidly spread and continues to spread across the United States.  It is a physical substance, human pathogen and can be present outside the human body in viral fluid particles.  According to the CDC, everyone is at

7

risk of getting COVID-19.

38.     COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

39.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a table, floor, wall, furniture, desk, countertop, touch screen or chair) that has the virus on it, and then touching their own mouth, nose or eyes.  COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

40.     More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects.

41.     In addition, The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observation.  An April 2020 study published in the journal Emerging Infectious Diseases found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards.  This means there has been a finding of COVID-19 in the air.

42.     COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Missouri.

43.     COVID-19 has been transmitted by human to human contact and interaction with premises in Missouri.

44.     COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in Missouri.

8

45.    The presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe.

46.    The presence of any COVID-19 particles on physical property impairs its value, usefulness, and/or normal function.

47.    The presence of any COVID-19 particles causes direct physical harm, direct physical damage, and direct physical loss to property.

48.    The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

49.    The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises unsafe, resulting in direct physical loss to the premises and property.

50.    Plaintiffs' premises likely have been infected with COVID-19 and they have suffered direct physical loss to the property. The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two plus months were infected with COVID-19 and thereby infected the insured property with COVID-19.

51.    To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

52.    COVID-19 has been declared a pandemic by the World Health Organization.

9

53.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize restaurants and other establishments.

54.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (the "Closure Orders").

## The Missouri Closure Orders

55.     On March 12, 2020, Quinton D. Lucas, the Mayor of the City of Kansas City, Missouri, issued a proclamation declaring a state of emergency, stating that the continued spread of COVID-19 constitutes a natural calamity and presents an imminent threat of widespread illness, which requires emergency action. The proclamation was ordered "to protect life and property" and permitted the city to order evacuations, close public places, impose curfews, limit public gathering and assemblies, and to order the closing of any and all businesses.

56.     On March 21, 2020, Mayor Lucas issued a civil authority order stating in pertinent part:

    i.   The COVID-19 virus spreads between people who are in close contact with one another through respiratory droplets produced when an infected person coughs or sneezes;

    ii.  A gathering of individuals without necessary mitigation for the spread of infection may pose a risk of the spread of infectious disease;

    iii. That the City wishes to impose all means available under the law to protect public life, health, safety and property;

    iv.  That as of March 16, 2020, numerous cases of COVID-19 illness, including a fatality and evidence of community transmission, have been identified in

10

jurisdictions bordering Kansas City; and

    v.    That on March 20, 2020, the Kansas City Health Department confirmed 12 cases, including possible community spread, of the COVID-19 illness in Kansas City, Missouri.

57.    Mayor Lucas' March 21, 2020 order required all individuals to stay at home unless performing "essential activities," and ordered all businesses to cease all in-person operations unless declared an "essential business." The order required all restaurants to suspend operations except for providing delivery or carry out only. The order was to remain in effect until 11:59 PM on April 24, 2020.

58.    On March 22, 2020, the City of Kansas City, Missouri issued a civil authority order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined in the order. The order also required all "non-essential" business to cease in-person operations. As defined in the order, "Essential Businesses," include things like healthcare operations, essential infrastructure, and grocery stores.

59.    On April 16, 2020, Mayor Lucas amended the March 21, 2020 order and extended its enforcement to 12:01 AM on May 15, 2020.

60.    On April 16, 2020, Kansas City extended the order through May 15, 2020. Restaurants were deemed an Essential Business, but their operations were strictly limited to "delivery or carry out" and as a result Plaintiffs were forced to suspend all operations in their dining rooms.

61.    On March 24, 2020, Jackson County, Missouri issued a stay-at-home order similarly requiring individuals in the county to avoid leaving their homes except as necessary.

11

62.     On April 3, 2020, the State of Missouri entered an order directing all residents in Missouri to stay at home, imposing social distancing rules, limiting occupancy of buildings, and reiterated that any entity that does not employ individuals to perform essential worker functions as set forth in guidance provided by the U.S Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CISA) shall adhere to limitations on social gatherings and social distancing set forth in the Order.  This order went into effect at 12:01 AM on April 6, 2020 and was to remain in force until 11:59 PM on April 24, 2020.  The purpose of the order was to mitigate and slow the spread of COVID-19 in the state.

63.     On April 16, 2020, the State of Missouri amended the April 3, 2020 order and extended its enforcement to 11:59 PM on May 3, 2020.  The purpose of the order was to mitigate and slow the spread of COVID-19 in the state.

64.     In Kansas City, Missouri, under the Mayor's 10-10-10 plan, restaurants are required to separate tables and parties, greatly reducing occupancy.

65.     The Missouri Closure Orders were issued in response to the rapid spread of COVID-19 throughout Missouri and are civil authority orders requiring the suspension of Plaintiffs' businesses.

66.     As a response to COVID-19 and the Pandemic, the Governor of Missouri, the Mayor of the Kansas City, Missouri, and the Executive of Jackson County, Missouri have issued these orders pursuant to the authority vested in them by the Missouri Constitution, the laws of Missouri and the ordinances of Kansas City, Missouri and Jackson County.

67.     Similarly, the Missouri Department of Health, pursuant to its authority under Missouri law, has issued orders, including a Stay at Home Order.

68.     The State of Missouri is a civil authority contemplated by Defendant's policy.

12

69. The City of Kansas City, Missouri is a civil authority contemplated by Defendant's policy.

70. Jackson County, Missouri is a civil authority contemplated by Defendant's policy.

71. The Governor of the State of Missouri is a civil authority contemplated by Defendant's policy.

72. The Mayor of Kansas City, Missouri is a civil authority contemplated by Defendant's policy.

73. The Executive of Kansas City, Missouri is a civil authority contemplated by Defendant's policy.

**The Kansas Orders**

74. On March 12, 2020, the State of Kansas declared a state of disaster emergency due to the pandemic and public health emergency of COVID-19.

75. On March 22, 2020, Johnson County, Kansas issued an Emergency Public Health Order stating that on March 19, 2020, the Board of County Commissioners of Johnson County, Kansas found that a disaster had occurred, or the threat thereof was imminent within Johnson County, Kansas as a result of the Coronavirus pandemic (COVID-19) and the confirmed outbreak and person-to-person spread of COVID-19 in Johnson County, Kansas. The Order stated that COVID-19 had been confirmed in Johnson County, Kansas and the conditions endanger health, safety and welfare of persons and property within the border of Johnson County, Kansas. As a result, the Order cancelled large gatherings, implemented social distancing requirements, ordered individuals to stay at home except to perform essential activities, and suspension of businesses unless excluded as essential. The Order required all restaurants to suspend operations except for providing delivery or carry out only, but expressly forbid consumption on the premises. This Order

became effective at 12:01 AM on March 24, 2020 and was to remain in force until 12:01 AM on April 23, 2020.

76.     On March 28, 2020, the Governor of Kansas issued a statewide stay-home executive order through April 19, 2020.  On April 16, 2020, the Governor of Kansas extended the stay at home order to May 3, 2020.   The Kansas stay-home orders prohibited residents of Kansas from leaving their homes, except for essential activities.  Restaurants were deemed an essential business, but their operations were strictly limited to "take out, curbside, and delivery of food" and as a result Plaintiffs were forced to suspend all operations in their dining rooms.  Social distancing is still required, greatly reducing dining room capacity.

77.     On April 11, 2020, the State of Kansas issued guidance regarding Executive Order No. 20-16 to make it clear that "dine-in service at restaurants and bars is not an essential function or essential activity and therefore remains prohibited…." The guidance further stated, "Restaurants and bars may not reopen for dine-in service."

78.     On April 16, 2020, the State of Kansas issued Executive Order No. 20-24, extending Executive Order 20-16 to May 3, 2020. As of April 16, 2020, there had been over 1,426 positive cases of COVID-19 in Kansas, spread among 62 counties, and 69 deaths as a result of the illness.

79.     The Kansas Closure Orders were issued in response to the rapid spread of COVID-19 throughout Kansas and are civil authority orders requiring the suspension of Plaintiffs' businesses.

80.     The State of Kansas is a civil authority contemplated by Defendant's policy.

81.     The Governor of the State of Kansas is a civil authority contemplated by Defendant's policy.

14

**The Oklahoma Orders**

82.     On April 1, 2020, the Governor of Oklahoma issued an executive statewide stay-at-home order through April 30, 2020. Restaurants are required to follow social distancing rules, greatly reducing dining room capacity.

83.     The State of Oklahoma is a civil authority contemplated by Defendant's policy.

84.     The Governor of the State of Oklahoma is a civil authority contemplated by Defendant's policy.

**The Impact of COVID-19 and the Closure Orders**

85.     Loss of use of property that has not been physically altered constitutes "physical loss or damage" for purposes of first-party property insurance.

86.     As the drafter of the policies, if State Auto had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered or deformed, it could have used explicit language stating such a definition, but it did not do so.

87.     The presence of COVID-19 caused direct physical loss of or damage to the Covered Property under the Plaintiffs' policy, and the policies of the other class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension of operations during a period of restoration.

88.     The Closure Orders prohibited access to and use of Plaintiffs' and the other class members' covered property, and the area immediately surrounding damaged property, in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.

89.     The State of Missouri, through the Governor and Department of Health, the City of Kansa City, Missouri, through the Mayor, and Jackson County, through the Executive, have issued

and continue to issue authoritative orders governing Missourians and Missouri businesses, including the Plaintiffs' business, in response to COVID-19 and the pandemic, the effect of which have required and continue to require Plaintiffs to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the policy.

90. State and local governmental authorities and public health officials around the United States acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property. For example: (a) The State of Colorado issued a Public Health Order indicating that "COVID-19…physically contributes to property loss, contamination and damage…" (b) The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus physically is causing property loss and damage." (c) Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "is physically causing property damage." (d) the State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression…remains a public disaster affecting life, health [and] property." (e) The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to physically impact surfaces and personal property." (f) the City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for a prolonged period of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances." (g) the State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "property." (h) North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives" but also to "assure adequate protection of…property." (i) The City of Los Angeles issued an Order in response to COVID-19 "because,

16

among other reasons, the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time; and (j) The City of Kansas City, Missouri issued a Proclamation in response to COVID-19 "to protect life and property".

91.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other class members lost Business Income and incurred Extra Expense.

<strong><u>Plaintiffs Submitted Notices of Loss to State Auto<br>and were Wrongfully Denied Coverage</u></strong>

92.     Plaintiffs submitted notices of loss to State Auto under the policy due to the presence of COVID-19 and the Closure Orders, and State Auto denied those claims by letter dated April 24, 2020.

93.     Upon information and belief, State Auto is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiffs and is otherwise uniformly refusing to pay insureds under its standard policy for losses related to COVID-19.

## V.     <u>CLASS ACTION ALLEGATIONS</u>

94.     Plaintiffs bring this action, individually and on behalf of all others similarly situated, pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4), of the Federal Rules of Civil Procedure.

95.     Plaintiffs seek to represent nationwide classes for business income coverage defined as:

> a.  All persons and entities with Business Income coverage under a property insurance policy issued by State Auto that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

17

b. All persons and entities that: had Business Income coverage under a property insurance policy issued by State Auto; suffered a suspension of business related to COVID-19, at the premises covered by their State Auto property insurance policy; made a claim under their property insurance policy issued by State Auto; and were denied Business Income coverage by State Auto for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

96.    Plaintiffs seek to represent nationwide classes for extra expense coverage defined as:

a. All persons and entities with Extra Expense coverage under a property insurance policy issued by State Auto that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their State Auto property insurance policy (the "Extra Expense Declaratory Judgment Class").

b. All persons and entities that: had Extra Expense coverage under a property insurance policy issued by State Auto; sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their State Auto property insurance policy; made a claim under their property insurance policy issued by State Auto; and were denied Extra Expense coverage by State Auto despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

97.    Plaintiffs seek to represent nationwide classes for civil authority coverage defined as:

a. All persons and entities with Civil Authority coverage under a property insurance policy issued by State Auto that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

b. All persons and entities that: had Civil Authority coverage under a property insurance policy issued by State Auto; suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; made a claim under their property insurance policy issued by State Auto; and were denied Civil Authority coverage by State Auto for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

98.     Plaintiffs seek to represent nationwide classes for sue and labor coverage defined as:

a. All persons and entities with a Sue and Labor provision under a property insurance policy issued by State Auto that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their State Auto property insurance policy (the "Sue and Labor Declaratory Judgment Class").

b. All persons and entities that: had a Sue and Labor provision under a property insurance policy issued by State Auto; sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their State Auto property insurance policy; made a claim under their property insurance policy issued by State Auto; and were denied Sue and Labor coverage by State Auto in connection with the suspension of

19

business caused by COVID-19 (the "Sue and Labor Breach Class").

99.     Plaintiffs seek to represent a Missouri subclass, or all policyholders who purchased one of Defendant's policies in Missouri and were denied coverage due to COVID-19.

100.    Plaintiffs seek to represent a Kansas subclass, or all policyholders who purchased one of Defendant's policies in Kansas and were denied coverage due to COVID-19.

101.    Plaintiffs seek to represent an Oklahoma subclass, or all policyholders who purchased one of Defendant's policies in Oklahoma and were denied coverage due to COVID-19.

102.    Excluded from each defined Class are State Auto and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during this litigation.

103.    This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1).**

104.    The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from State Auto's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

105.   This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.   State Auto issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.   whether State Auto wrongfully denied all claims based on COVID-19;

d.   whether State Auto's Business Income coverage applies to a suspension of business caused by COVID-19 and/or the Stay at Home Orders;

e.   whether State Auto's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19 and/or the Stay at Home Orders;

f.   whether State Auto's Civil Authority coverage applies to a loss of Business Income and Extra Expense sustained caused by the orders of state governors and/or mayors requiring the suspension of businesses as a result of COVID-19 and/or the Stay at Home Orders;

g.   whether State Auto's Sue and Labor provision applies to require State Auto to pay for efforts to reduce damage caused by COVID-19 and/or the Stay at Home Orders;

h.   whether State Auto has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss related to COVID-19 and the related closures; and

21

whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

106.    Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by State Auto's refusal to pay under its Business Income, Extra Expense, Civil Authority, and Sue and Labor coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which State Auto engaged.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**

107.    Plaintiffs are adequate Class and Missouri, Kansas, and Oklahoma subclass representatives because they are members of the class, their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**Inconsistent Adjudications and Impediments to Others—Federal Rule of Civil Procedure 23(b)(1).**

108.    Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of State Auto's Business Income, Extra Expense, Civil Authority, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible

22

standards of conduct for State Auto. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**

109.    State Auto acted or refused to act (or intends to refuse) on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

**Superiority—Federal Rule of Civil Procedure 23(b)(3).**

110.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Defendant has acted or refused to act on grounds generally applicable to the class and Missouri, Kansas, and Oklahoma subclasses. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**Issue Class and Modification of Class Definitions and Creation of Subclasses**

111.    In the alternative, Plaintiffs reserve the right to seek certification of one or more common issues pursuant to Rule 23(c)(4).  In addition, Plaintiffs reserve the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following policy provisions: Business Income, Civil Authority, Extra Expense, and/or Sue and Labor coverage and/or other subclasses that may be appropriate or necessary.

## VI.    LEGAL CLAIMS FOR RELIEF

### COUNT I – Declaratory Judgment – Business Income Coverage
### (Brought on behalf of the Business Income Declaratory Judgment Class)

112.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

113.    Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class and Missouri, Kansas, and Oklahoma Subclasses.

114.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

115.    Plaintiffs' State Auto policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which State Auto was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

116.    Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by State Auto, or State Auto is estopped from asserting them, and yet State Auto has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Business Income Declaratory Judgment Class members are entitled.

117.    State Auto has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

118.    An actual case or controversy exists regarding Plaintiffs and the other Business Income Declaratory Judgment Class members' rights and State Auto's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs

24

and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

119.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

        a.   Plaintiffs and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure or Stay at Home Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

        b.   State Auto is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

        c.   Plaintiffs further seek an injunction enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Business Income coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

**COUNT II – Breach of Contract – Business Income Coverage**
**(Brought on behalf of the Business Income Breach Class)**

120.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

121.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class and Missouri, Kansas, and Oklahoma Subclasses.

122.     Plaintiffs' State Auto policies, as well as those of the other Business Income Breach Class members, are contracts under which State Auto were paid premiums in exchange for their

promise to pay Plaintiffs and the other Business Income Breach Class members' losses for claims covered by the policy.

123. In the Businessowner Special Property Coverage Form, State Auto agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

124. "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

125. COVID-19 caused direct physical loss of or damage to Plaintiffs' and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiffs and the other Business Income Breach Class members' State Auto policies.

126. Plaintiffs and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

127. By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

128. As a result of Defendant's breaches of the policies, Plaintiffs and the other Business Income Breach Class members have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III – Declaratory Judgment – Extra Expense Coverage
## (Brought on behalf of the Extra Expense Declaratory Judgment Class)

129.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

130.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class and Missouri, Kansas, and Oklahoma Subclasses.

131.     The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

132.     Plaintiffs' State Auto insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

133.     Plaintiffs and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

134.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

135.     An actual case or controversy exists regarding Plaintiffs' and the other Extra Expense Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure

27

Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

136.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a.   Plaintiffs and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

      b.   Defendant is obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

      c.   Plaintiffs further seek an injunction enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Extra Expense coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

**COUNT IV – Breach of Contract – Extra Expense Coverage**
**(Brought on behalf of the Extra Expense Breach Class)**

137.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

138.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Breach Class and Missouri, Kansas, and Oklahoma Subclasses.

139.     Plaintiffs' State Auto insurance policies, as well as those of the other Extra Expense Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Breach Class members' losses for claims

28

covered by the policy.

140.    In the Businessowners Special Property Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not has sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

141.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

142.    Due to COVID-19 and the Closure Orders, Plaintiffs and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property Plaintiffs and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

143.    By denying coverage for any business losses incurred by Plaintiffs and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

144.    As a result of Defendant's breaches of the policies, Plaintiffs and the other members of the Extra Expense Breach Class have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

### COUNT V – Declaratory Judgment – Civil Authority Coverage
### (Brought on behalf of the Civil Authority Declaratory Judgment Class)

145.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

146.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class and Missouri, Kansas, and Oklahoma Subclasses.

29

147.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

148.    Plaintiffs' State Auto insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

149.    Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

150.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

151.    An actual case or controversy exists regarding Plaintiffs and the other Civil Authority Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

152.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiffs and the other Civil Authority Declaratory Judgment Class members'
    Civil Authority losses incurred in connection with the Closure Orders and the
    necessary interruption of their businesses stemming from the COVID-19
    pandemic are insured losses under their policies;

b.  Defendant is obligated to pay Plaintiffs and the other Civil Authority
    Declaratory Judgment Class members the full amount of the Civil Authority
    losses incurred and to be incurred in connection with the covered losses related
    to the Closure Orders and the necessary interruption of their businesses
    stemming from the COVID-19 pandemic; and

c.  Plaintiffs further seek an injunction enjoining Defendant from continuing to
    engage in conduct in breach of its policies in regards to coverage decisions
    under the Civil Authority coverage form and ordering Defendant to comply
    with the terms of the policies in regards to coverage decisions.

### COUNT VI – Breach of Contract – Civil Authority Coverage
### (Brought on behalf of the Civil Authority Breach Class)

153.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

154.    Plaintiffs bring this Count individually and on behalf of the other members of the
Civil Authority Breach Class and Missouri, Kansas, and Oklahoma Subclasses.

155.    Plaintiffs' State Auto insurance policies, as well as those of the other Civil
Authority Breach Class members, are contracts under which Defendant was paid premiums in
exchange for its promise to pay Plaintiffs and the other Civil Authority Breach Class members'
losses for claims covered by the policy.

156.    Defendant agreed to "pay for the actual loss of 'Business Income'" sustained "and
necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to"

31

the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage…."

157.     The Closure Orders triggered the Civil Authority provision under Plaintiffs and the other members of the Civil Authority Breach Class's State Auto insurance policies.

158.     Plaintiffs and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies, and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

159.     By denying coverage for any business losses incurred and extra expenses sustained by Plaintiffs and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

160.     As a result of Defendant's breaches of the policies, Plaintiffs and the other members of the Civil Authority Breach Class have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

### COUNT VII – Declaratory Judgment – Sue and Labor Coverage
### (Brought on behalf of the Sue and Labor Declaratory Judgment Class)

161.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

162.     Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class and Missouri, Kansas, and Oklahoma Subclasses.

32

163. The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

164. Plaintiffs' State Auto insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

165. Plaintiffs and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs are entitled.

166. Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

167. An actual case or controversy exists regarding Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

168. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a. Plaintiffs and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage

33

by COVID-19 are insured losses under their policies;

    b.   Defendant is obligated to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19; and

    c.   Plaintiffs further seeks an injunction enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Sue and Labor coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

### COUNT VIII – Breach of Contract – Sue and Labor Coverage
### (Brought on behalf of the Sue and Labor Breach Class)

169.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

170.    Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Breach Class and Missouri, Kansas, and Oklahoma Subclasses.

171.    Plaintiffs' State Auto policies, as well as those of the other Sue and Labor Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

172.    In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

173.    In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

174.    Plaintiffs and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

175.    By denying coverage for any Sue and Labor expenses incurred by Plaintiffs and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

176.    As a result of Defendant's breaches of the policies, Plaintiffs and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class and/or Subclass members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.    That the Court enter an order certifying the classes, appointing Plaintiffs as representatives of the classes, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b.    For a judgment against Defendant for the causes of action alleged against it;

c.    For compensatory damages in an amount to be proven at trial;

d.    For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the policy;

e.    For appropriate injunctive relief, enjoining Defendant from continuing to engage in

conduct related to the breach of the policy;

      f.      For pre-judgment and post-judgment interest at the maximum rate permitted by law;

      g.      For Plaintiffs' attorneys' fees;

      h.      For Plaintiffs' costs incurred; and

      i.      For such other and further relief as the Court deems just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all matters so triable.

Dated: July 22, 2020

Respectfully submitted by:

BOULWARE LAW LLC

 /s/ *Brandon J.B. Boulware*

Brandon J.B. Boulware     MO # 54150
Jeremy M. Suhr         MO # 60075
1600 Genessee Street, Suite 416
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:   (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

VOTAVA NANTZ & JOHNSON, LLC

BY:  */s/ Todd Johnson*

TODD JOHNSON      MO #48824
9237 Ward Parkway, Suite 240
Kansas City, MO 64114
Tele:   (816) 895-8800
Fax:   (816) 895-8801
tjohnson@vnjlaw.com

***Attorneys for Plaintiffs***